J-S03041-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
MICHAEL LEE HARTLEY, :
:
Appellant : No. 1248 WDA 2016

Appeal from the Judgment of Sentence July 27, 2016
in the Court of Common Pleas of Fayette County,
Criminal Division, at No(s): CP-26-CR-0001875-2015

BEFORE:     OLSON, SOLANO, and STRASSBURGER, JJ.*

MEMORANDUM BY: STRASSBURGER, J.:          **FILED FEBRUARY 22, 2017**

Michael Lee Hartley (Appellant) appeals from the July 27, 2016 judgment of sentence imposed following his conviction for one count each of aggravated assault and simple assault.  We affirm.

The trial court summarized the facts underlying Appellant's conviction as follows.

> [Appellant] was convicted by a jury of aggravated assault and simple assault as the result of an incident which occurred at approximately 2:00 A.M. or shortly thereafter on March 21, 2015 in the parking lot of the Cloverleaf Bar in Perryopolis, Fayette County, Pennsylvania.  At that time, the victim, Mitchell Davis, was walking to his car in the parking lot when he was hit in the head from behind by person(s) he could not see.  When the victim turned around, he saw [Appellant] and one of [Appellant's] friends.  [Appellant] and his friend then hit and kicked the victim in his head and his back, even while he asked them to stop.  He was on the ground, and had to raise his arms to try to protect his head.  The victim saw [Appellant] punching and stomping him.  [Appellant] and his friend were also stomping his head and the side of his chest.  Bystanders called

*Retired Senior Judge assigned to the Superior Court.

the police and an ambulance, and the victim was eventually transported by Life Flight helicopter to [a hospital] … , where he underwent surgery to have plates implanted in his eyebrow, cheekbone, and upper lip.  His one eye was left lower than the other one so the victim now must wear glasses to cope with double vision[,] which he had never had before the incident.  As part of the facial surgery, the victim underwent a tracheotomy because his nasal passages were so damaged, he could not be intubated.  The tracheotomy was kept in place about six weeks following the surgery.

[A] bartender at the Cloverleaf Bar, Kari Wingrove, … observed the victim on his hands and knees, looking as though he was already beat up because he already had a bloody nose and was struggling to get up.  Ms. Wingrove then saw [Appellant] walking quickly toward the victim and forcefully kicking him in the face "like he was a football." Upon sustaining the kick to the head, the victim reeled backwards onto his back and started making a gurgling sound as though he was choking on his own blood.  The punches and stomping from [Appellant] caused the victim severe pain, and has necessitated a prescription for Zoloft to treat anxiety and depression, which he had not needed before the incident.

The victim's mother, Sherry Zebley, told the jury that she arrived at the bar shortly after receiving a telephone call at 2:58 A.M. March 21, 2015, and saw her son being carried out of the bar on a gurney, then put into an ambulance, prior to the flight to [the hospital].  [W]hen she arrived at the hospital, she observed that the victim's eyes were swollen shut, his face was swollen, and he had a pressure tube up his nose to keep the nose from bleeding.  The victim was a patient in the hospital for ten days.  He had to undergo surgery on March 26, including the performing of the tracheotomy, the tubing for which remained in his throat for about six weeks.  Following the surgery, the victim remained in the [intensive care unit] for two days.

Trial Court Opinion, 9/21/2016, at 1-3 (citations to the record omitted).

Having heard this evidence, a jury convicted Appellant of the aforementioned crimes on July 7, 2016.  Appellant was sentenced on July

27, 2016 to five to ten years of incarceration. Appellant timely filed a post-sentence motion on August 3, 2016, which was denied by order dated August 11, 2016. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents this Court with five questions:

[1.] Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant attempted to cause serious bodily injury to [the victim]?

[2.] Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that Appellant caused serious bodily injury to [the victim]?

[3.] Did the trial court abuse its discretion by allowing [the victim's] mother to testify as to the injuries allegedly suffered by [the victim] and the impact of the alleged assault on [the victim's] life?

[4.] Did the trial court abuse its discretion in admitting as evidence a close-up photograph of [the victim] in the hospital following the alleged assault?

[5.] Did the sentencing court err in applying the offense gravity score assigned for aggravated assault, 18 Pa.C.S.[] § 2301, with serious bodily injury when there was no express finding that [the victim] suffered serious bodily injury?

Appellant's Brief at 8.

Appellant's first and second issues challenge the sufficiency of the evidence to support his aggravated assault conviction. We begin with our standard of review.

[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict

- 3 -

winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

… Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Tukhi*,** 149 A.3d 881, 886–87 (Pa. Super. 2016) (internal citations omitted). Credibility of witnesses and the weight of the evidence produced is within the province of the trier of fact, who is free to believe all, part or none of the evidence. ***Commonwealth v. Scott*,** 146 A.3d 775, 777 (Pa. Super. 2016).

Appellant was convicted of violating subsection 2702(a)(1) of the crimes code, which provides in relevant part: "A person is guilty of aggravated assault if he … attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1).

Arguing that he did not make any statement regarding the attack and did not escalate it despite an opportunity to do so, Appellant asserts the

totality of the circumstances does not establish his intent to cause serious bodily injury. Appellant's Brief at 13-15. Appellant alternatively argues the Commonwealth did not prove Appellant's single kick to the head caused serious bodily injury because there were multiple actors and the Commonwealth did not introduce medical testimony.[1] *Id.* at 16. He further asserts the victim's injuries are similar to the injuries our Supreme Court deemed to be not serious in **Commonwealth v. Alexander,** 383 A.2d 887 (Pa. 1978). *Id.* at 17.

The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

> Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. The Commonwealth need only prove [the defendant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

---

[1] Appellant's complaint that the Commonwealth could not prove the victim suffered serious bodily injury without medical testimony is without merit. Appellant stipulated to the entry of the victim's medical records. N.T., 7/6/16, at 4. Moreover, he did not object when the victim testified about his need for reconstructive surgery and the insertion of a tracheotomy in his throat due to crushed nasal cavities. *Id.* at 13. He also fails to cite to any authority for his proposition that medical testimony is required to prove serious bodily injury. Therefore, he has waived this argument. Pa.R.A.P. 302(a), 2119(a); Pa.R.E. 103(a).

***Commonwealth v. Patrick,*** 933 A.2d 1043, 1046 (Pa.Super. 2007) (*en banc*) (citations and emphasis omitted).

Here, Appellant acknowledges he is larger than the victim. Appellant's Brief at 14. The victim testified that after he was hit on the head and "tasered" by unknown person(s), he was "put to the ground." N.T., 7/6/2016, at 7-8. The victim then observed Appellant and another individual "punching and stomping" him on his head and chest before losing consciousness. ***Id.*** at 7-10. Kari Wingrove, a witness to the incident, observed the victim on his hands and knees, already "beat up," when Appellant "kicked [the victim] in the face like he was a football." ***Id.*** at 26. She described the kick as forceful, "like [Appellant] punted [the victim's] face", causing the victim to fly backwards on his back. ***Id.*** at 26-27. She heard him gurgling blood as if he was choking and observed he was "knocked out cold." ***Id.*** at 26-28. To avoid the victim's choking on his own blood, Ms. Wingrove and one of the people involved in the attack sat the victim up and rolled him on his side. Ms. Wingrove observed blood "just draining out of his face." ***Id.*** at 28. Appellant had to be taken by "Life Flight" to the hospital, where he underwent reconstructive facial surgery. ***Id.*** at 49. Due to his nasal passages being crushed so badly from the attack, he had to receive a tracheotomy, which was left in place for six weeks. ***Id.*** at 13.

Thus, the victim did in fact suffer a serious bodily injury as a result of the attack. As the trial court described, "testimony established [Appellant] struck and kicked the victim multiple times, causing concussion-like symptoms and facial injuries that necessitated surgery and a stay in the [intensive care unit], and resulting in ongoing damage to the victim's eyesight, as well as bouts of depression and anxiety for which the victim now must take prescription medications." Trial Court Opinion, 9/21/2016, at 4. This is a much different situation than *Alexander*, where the defendant punched the victim once in the face, causing the victim to fall to the ground. The *Alexander* victim never lost consciousness and merely had to be treated at the emergency department for a broken nose. *Alexander*, 383 A.2d at 888-89. Additionally, it is clear that given the evidence presented, the jury reasonably could conclude that Appellant's forceful kick to the victim's face, delivered after Appellant already had hit and stomped on the victim while the victim was on the ground begging Appellant and the others to stop, demonstrated Appellant's intent to cause the victim serious bodily injury or, at a minimum, Appellant's extreme indifference to the victim's life. *See Commonwealth v. Glover*, 449 A.2d 662, 665–66 (Pa. Super. 1982) (holding a jury could infer intent to cause serious bodily injury where a group of three people hit a relatively smaller-sized victim in the head and kicked him); *Commonwealth v. Rodriquez*, 673 A.2d 962, 965–67 (Pa.

Super. 1996) (same). Moreover, repeatedly punching and stomping on a person while he is on the ground, and then kicking that person in the face in the same manner as one would punt a football, all but guarantees the person will experience a serious bodily injury. *See Commonwealth v. Matthew*, 909 A.2d 1254, 1259 (Pa. 2006) (noting a fact-finder is justified in finding intent based upon the intent suggested by the conduct). Accordingly, we hold the evidence was sufficient to sustain Appellant's conviction for aggravated assault.

In his third issue, Appellant argues the trial court abused its discretion by allowing the victim's mother to testify as to the victim's injuries and the impact of the assault on the victim's life. Specifically, Appellant argues the testimony was prejudicial and cumulative, and akin to a victim impact statement offered improperly during the guilt phase of the trial so as to garner sympathy from the jury. Appellant's Brief at 19-21. However, Appellant failed to lodge an objection contemporaneous to the testimony. An appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal. *Commonwealth. v. Thoeun Tha*, 64 A.3d 704, 713 (Pa. Super. 2013); *see also* Pa.R.A.P. 302(a); Pa.R.E. 103(a). Therefore, we deem Appellant's third issue to be waived.

Even if Appellant did not waive this issue, the trial court did not abuse its discretion in allowing the victim's mother to testify. "Admission of

evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." ***Commonwealth v. Cain***, 29 A.3d 3, 6 (Pa. Super. 2011). More than just a mere error in judgment, an abuse of discretion occurs when the judge overrides or misapplies the law, exercises manifestly unreasonable judgment, or demonstrates partiality, prejudice, bias, or ill-will. ***Id.*** As the trial court describes, the victim's mother "testified of her own personal knowledge as to the length of the victim's entire hospitalization, his appearance and the sounds he made while he was a patient, as well as the number of hours necessary for his facial surgery." Trial Court Opinion, 9/21/2016, at 4. These subjects were clearly probative of whether the victim suffered serious bodily injury, an element of aggravated assault.

In his fourth issue, Appellant argues the trial court abused its discretion in admitting Commonwealth's Exhibit 2 into the record, which is a close-up photograph of the victim in the hospital following the assault. Specifically, Appellant argues the photograph is inflammatory and did not offer any probative value. Appellant's Brief at 22-23. Our review of the record reveals that the only objection Appellant's counsel made in response to the Commonwealth's attempted introduction of photographs was an objection regarding an unspecified group of photographs taken by the victim's mother. However, the trial court sustained the objection and the

group was not admitted into evidence. N.T., 7/6/2016, at 54. Thus, because Appellant did not preserve the issue on the record to enable us to review the claim, we deem his fourth issued to be waived. *See Thoeun Tha*, 64 A.3d at 713.

Even if Appellant did not waive his fourth issue, once again we cannot conclude that the trial court abused its discretion. The trial court permitted the Commonwealth to enter only a single photograph out of a grouping. The trial court determined this photograph was not inflammatory because it accurately depicted the "nature and extent of [the victim's] head and face injuries." Trial Court Opinion, 9/21/2016, at 5-6. This was probative of whether the victim suffered a serious bodily injury as well as "the degree of harm intended by [the] assailant." *Commonwealth v. Dennis*, 460 A.2d 255, 257-59 (Pa. Super. 1983) (concluding the trial court did not abuse its discretion by determining three color photographs depicting a victim in his hospital bed with discoloration and swelling in his eye area were relevant and not inflammatory).

Finally, Appellant argues the sentencing court erred in applying an offense gravity score of 11 for the offense of aggravated assault. Citing to *Commonwealth v. Caterino,* 678 A.2d 389 (Pa. Super. 1996), Appellant argues the sentencing court should have applied the offense gravity score of ten because neither the jury at trial nor the court at sentencing made an

express finding that the victim suffered a serious bodily injury. Appellant's

Brief at 26.

Appellant's challenge is to the discretionary aspects of his sentence.[2]

We consider his question mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(internal citations and quotation marks omitted).

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the

---

[2] Although he included a concise statement in his brief pursuant to Pa. R.A.P. 2119(f), as an alternative argument, Appellant argues his claim presents a legal issue and is not subject to discretionary review, citing to *Commonwealth v. Coss,* 695 A.2d 831 (Pa. Super. 1997). *Coss* held the issue of the proper offense gravity score in an aggravated assault case is a non-discretionary legal issue appealable as of right. However, *Coss* relied upon *Commonwealth v. Johnson,* 618 A.2d 415 (Pa. Super. 1992), which was overruled expressly by this Court on this issue. *Commonwealth v. Archer,* 722 A.2d 203, 210-11 (Pa. Super. 1998) (*en banc*) (overruling *Johnson* and holding any misapplication of the sentencing guidelines constitutes a challenge to the discretionary aspects of sentence).

> issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted). If a claim is preserved properly, an incorrect offense gravity score requires this Court to remand for resentencing or amend the sentence directly. *Archer*, 722 A.2d at 211.

Here, Appellant filed a notice of appeal after preserving the issue by filing a motion to modify his sentence. Appellant's brief properly contains a statement pursuant to Pa.R.A.P. 2119(f). Appellant's claim regarding misapplication of the Sentencing Guidelines raises a substantial question for our review. *Id.*, 722 A.2d at 210–11.

Accordingly, we shall address the merits of Appellant's claim. Because one may commit aggravated assault with or without inflicting serious bodily injury, *see* 18 Pa.C.S. § 2702(a)(1), aggravated assault is considered a "subcategorized" offense and is "scored by the [Sentencing] Commission according to the particular circumstances of the offense." 204 Pa. Code § 303.3(b). According to the sentencing guidelines, the court must determine which offense gravity score is applicable for subcategorized offenses. *Id.* In order to apply the higher offense gravity score of 11, the

court "must find that the defendant's conduct actually resulted in serious bodily injury." **Caterino**, 678 A.2d at 392. Without such a finding, the court must apply the offense gravity score applicable to a mere attempt to cause serious bodily injury, which currently is scored at ten. **Id.**; 204 Pa. Code § 303.15.

Here, while the sentencing court noted at the sentencing hearing that it took into consideration "the horrific injuries inflicted as a result of the crime," the court did not expressly state that the victim suffered a serious bodily injury.[3] N.T., 7/27/2016, at 7. However, as detailed above, there was sufficient evidence in the record to sustain such a finding. Thus, we discern no abuse of discretion in the sentencing court using an offense gravity score of 11 to calculate Appellant's sentence. **See Caterino,** 678 A.2d at 392–93 (holding that even though the sentencing court did not make an express finding of serious bodily injury, it properly used an offense gravity score of 11 because the evidence of the victim's injuries in the record sufficiently established serious bodily injury).

Judgment of sentence affirmed.

---

[3] The sentencing court did not make this finding until after Appellant filed his appeal, explaining in its initial and supplemental Pa.R.A.P. 1925 opinions its belief that there was sufficient evidence introduced at trial to prove that Appellant inflicted serious bodily injury upon the victim. Trial Court Opinion, 9/21/2016, at 3-4; Trial Court Opinion, 11/2/2016, at 2.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2017